# THE HARTFORD FIRE INSURANCE COMPANY

*v.*

# JOHN WALSH.

1: INSURANCE—*of the effect of a renewal of a policy.* A renewal of an insurance policy is, in effect, a new contract of assurance, and, unless otherwise expressed, on the same terms and conditions as were originally contained in the policy.

2. SAME—*of the premises becoming vacant.* So where a policy of insurance contained a condition that if the premises insured were vacated by the owner or occupant for a period of more than thirty days without notice to the company and consent endorsed on the policy, it should become void, it was *held*, upon a renewal of the policy, if the premises were occupied when the renewal occurred, it, under the terms of the policy, became the duty of the assured to give the same notice that was required under the original contract of insurance, and obtain the consent of the company.

3. SAME—*of notice and consent under the original contract.* And notice to the agents of the company, and their consent, while the policy was originally in force, could not be regarded as notice to the company and binding on them under the renewal thereof.

4. SAME—*omission to endorse consent on the policy.*  But it is not essential to the binding force of the consent of the agent in such case, given upon proper notice, that it should be endorsed upon the policy.

5. SAME—*of a part of the premises becoming vacant.*  Two houses were embraced in the same policy, and insured for different sums, and the policy provided that if the insured premises should remain vacant for a certain time without notice to the company, the policy should become void.  It was *held*, the fact that one of the buildings remained thus vacant, without notice to the insurer, would not invalidate the policy as to the other.

6. SAME—*proofs of loss and notice thereof.*  Where a policy of insurance provides that, in case of loss, the money shall be paid in sixty days after notice and proof of loss, the company, by receiving and retaining the notice, affidavit of loss, and other papers, and making no objection, must be regarded as admitting that they were properly made and presented.

7. And the assured is not required to introduce in evidence the notice of the loss, but may, by proof that he has delivered the notice and other papers, and that the company had interposed no objection to their regularity, raise the presumption that he has complied with the requirements of the policy in that regard.

8. SAME—*change of title—mortgage.*  A policy of insurance contained this condition:  " Or if any change takes place in the title or possession of the property, whether by sale, legal process, judicial decree, voluntary transfer or conveyance; or if the policy is assigned without consent of the company endorsed thereon, then the policy shall be void: "  *Held*, a mortgage was not embraced in such provision.

9. FORFEITURES *are odious to the law*, and in enforcing them courts should never search for that construction of language which must produce a forfeiture when it will bear another reasonable construction which will not produce such a result.


APPEAL from the Alton City Court; the Hon. HENRY S. BAKER, Judge, presiding.


The opinion states the case.


Mr. CHARLES P. WISE, for the appellants.


Messrs. L. & L. DAVIS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by appellee, to the September term of the Alton city court, against appellants, on a policy of insurance. It appears that appellee was, on the fourth day of June, 1866, the owner of a two-story and a one-story frame dwelling in the city of Alton, and that, in consideration of a premium paid the company, it issued a policy of insurance upon these houses to appellee, and insured the two-story-house at $1200, and the one-story house at $500, for one year from that date, against loss by fire, and in case of loss, the money to be paid in sixty days after notice and proof of loss; that in May, 1867, and before the policy expired, it was renewed for one year, and it was again, in June, 1868, renewed for another year; that about the twenty-third of December, 1868, the houses were both destroyed by fire; that in January, 1869, notice of the loss was given, and proof was made and rendered to appellants, and that the company had failed to pay the insurance money to appellee.

Appellants pleaded the general issue, and gave notice that on the trial they would rely upon the fact that the two-story house had remained vacant and unoccupied more than thirty days before it was burned, without giving notice as required by one of the conditions of the policy, whereby it had become void; that the policy, as to the one-story house, had become void by appellee having increased the risk on the same after the policy was issued, by changing it from a dwelling house to a fancy dry goods store and a dwelling, and was so used when it was burned, and that in violation of the policy, appellee had made a voluntary transfer and conveyance of the insured premises.

It is urged, as one of the conditions in the policy was that, if the premises were vacated by the removal of the owner or occupant for a period of more than thirty days without immediate notice to the company and consent endorsed on the policy, it should become void, that condition was violated by the removal of appellee from the two-story house, and subsequent

removal of a tenant who occupied the house ; and that it had remained vacant more than thirty days without notice to the company, and their consent endorsed on the policy. That the house did thus become and remain vacant is not contested, but it is insisted, and the evidence seems to justify the conclusion, that notice was given to the agents in May, 1867, and that one of them gave his verbal consent. It also appears that, subsequently to that time, the agency was changed, and McPike and Newman acted for the company from that time until the fire, and there is no pretense that any such notice was given to them or any other person at or subsequent to the time of the second renewal, which was obtained through them.

A renewal of a policy is,. in effect, a new contract of assurance, and, unless otherwise expressed, on the same terms and conditions as were contained in the original policy. If, then, the property was occupied when the last renewal occurred, it, under the terms of the policy, became the duty of the assured to give the same notice that was required in the policy, and to obtain the consent of the company. No one could, for a moment, contend that the consent given a year previous to the last renewal could have bound the company, had it been a new application, survey and policy granted, instead of the renewal. And in what does this renewal differ from the grant of such a policy? The old contract ended on the fourth, and the renewal bears date the eighth day of June, 1868, four days after the policy had expired. It then appears there can be no pretense that there was a continuation of the former insurance, but it must be regarded as a new contract, upon the same terms and conditions as entered into and formed the original contract of insurance. The argument, then, that the notice given to the former agents was notice to the company, and bound them, does not apply. Such notice and consent, although not endorsed on the policy, was, no doubt, sufficient, had the loss occurred under the policy then in force, but can not operate to dispense with the condition contained in the new policy. It may be,

and we are inclined to think that these policies are so far over-loaded with terms and conditions that they hardly amount to contracts to insure, but between parties able to contract they have the right to insert them, and when inserted, we must give them force and effect, although we may doubt the propriety of persons taking policies so burdened with conditions.

It is again urged that appellee should have produced the notice of the loss, or given notice to the company to produce it as the best evidence, and that the court erred in permitting him to testify that he had delivered the notice and other papers, and that the company had interposed no objection to their regularity. In this there was no error. The company, by receiving and retaining the notice, affidavit of loss, and other papers, and making no objection, must be regarded as admitting that they were properly made and presented, and it was not proof of the contents of these papers that was made or sought to be made, but it was that papers were delivered and retained by the company without objection, to raise the presumption that appellee had complied with the requirement of the policy.

It is again objected that the court below erred in rejecting evidence that appellee had mortgaged the premises after obtaining the policy, and without the consent of the company. The condition in the policy which is supposed to prohibit the mortgaging of the premises, is this : " Or if any change take place in the title or possession of the property, whether by sale, legal process, judicial decree, voluntary transfer or conveyance, or if the policy is assigned, without consent of the company endorsed thereon." Does a mortgage come within the provision ? It is not a sale, either in its ordinary or technical sense. There is no pretense that the title was affected by legal process or judicial decree, nor can it be said that there was, according to the usual acceptation of the terms, a voluntary transfer or conveyance. In enforcing forfeitures, courts should never search for that construction of language which must produce a forfeiture, when it will bear another reasonable construction

which will not produce such results. According to popular use, these terms, nor any of them, are understood to embrace a mortgage, and this being so, we would not enforce a forfeiture, if some one of them could be held technically to embrace such an instrument. *The Commercial Ins. Co.* v. *Spankneble*, 52 Ill. 53. Forfeitures are odious to the law, and when we see these policies burdened with conditions rendering it exceedingly difficult for the assured to observe them, whether he occupies the premises or not, we feel no inclination to strain for a construction of these conditions that will defeat a recovery, but shall content ourselves by giving the language a fair and reasonable interpretation. It is believed that if the agents would exercise more care in the character of the persons they insure, and the character and situation of the property upon which they take risks, there would be less necessity for so large a number of conditions.

Whether the risk was increased by using one of the rooms in the smaller house, is a question of fact to be determined by the jury under proper instructions from the court, and as the case will have to be passed upon by another jury, we refrain from commenting on the evidence. We are at a loss to perceive how, by permitting the two-story house to become vacant without notice to and consent from the company, could invalidate the policy on the small frame dwelling. So far as the instructions violated the rules here announced, they were erroneous, and for that reason the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*