# UNITED STATES TO THE USE OF THE DISTRICT OF COLUMBIA *v.* BAYLY.*

### Bonds; Principal and Surety.

1. The rule of *strictissimi juris* has no application to surety companies organized for the purpose of conducting an indemnity business at established rates of compensation.

2. A surety company which has obligated itself for the faithful performance of a contract with a municipality for a specified period, for the collection of ashes, is not liable for default alleged to have occurred after the expiration of the original contract and under a renewal contract, in which the surety company in no way concurred.

3. A bond fairly susceptible of two constructions should be given that interpretation most unfavorable to the party by whose agents it was prepared.

No. 2399.   Submitted May 7, 1912.   Decided May 30, 1912.

Hearing on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia sustaining a demurrer to the declaration in an action upon a bond.

*Affirmed.*

*Surety and Trust Companies.*—On legal powers and privileges of surety and trust companies, see note in 48 L.R.A. 587.

The COURT in the opinion stated the facts as·follows:

The District of Columbia, plaintiff below, appeals from the judgment of the Supreme Court of the District of Columbia entered upon a sustained demurrer interposed by defendant, Fidelity and Deposit Company of Maryland, to a declaration in which plaintiff seeks to recover upon a bond given to secure the performance of the conditions of a contract between plaintiff and one Sampson P. Bayly, Jr.

It is alleged in the declaration that on June 29, 1905, a contract was made between plaintiff and Sampson P. Bayly, Jr., by which it was provided that Bayly should "collect ashes from all private residences  *  *  *  and such other like places as may be designated by the Commissioners of the District of Columbia, weekly from April 16th to October 31st  *  *  *  and the remainder of ·the city  *  *  *  as said  *  *  *  sections may from time to time be' designated by the Commissioners  *  *  *  for a period of two (2) years, beginning August 1st, 1905,  *  *  *  the party of the first part to have the privilege of renewing this contract for a period of one (1) year, two (2) years, or two (2) years and eleven (11) months, at the option of the said party of the first part; payments for the renewal periods to be at the same rate per annum provided for in this contract." Bayly was to be paid annually for his services the sum of fifty-four thousand dollars.

At the time of the execution of this contract Bayly furnished to the District a bond upon which the defendant, Fidelity and Deposit Company, was surety. The bond provided in its recital: "Whereas  *  *  *  Bayly  *  *  *  has contracted  *  *  *  to furnish all necessary labor and materials, except as therein otherwise provided  *  *  *, in strict accordance with the terms, conditions, and provisions of the foregoing contract, and execute the work of collecting  *  *  *  within the existing fire limits  *  *  *  and the remainder of the city of Washington and its suburbs and sections, as said sections may, from time to time, be designated by the Commis-

sioners of the District of Columbia, for a period of two (2) years, beginning August 1st, 1905, as more fully set forth in the foregoing contract and on the conditions and for the consideration in the foregoing contract, mentioned and contained, or referred to therein." The condition of the bond provided "that if the said Sampson P. Bayly, Jr., shall strictly perform, to the satisfaction and acceptance of the Commissioners * * *, the work to be done by him in accordance with the stipulations of said contract * * *, and will in every respect fully comply with the provisions and requirements of said contract, then this obligation to be void; otherwise to remain in full force and virtue."

It is conceded that Bayly fully performed all the conditions of his contract with the District for the period of two years from the 1st day of August, 1905. On April 30, 1907, the Commissioners of the District attempted to exercise the privilege of renewing its contract with Bayly for a period from August 1, 1907, to June 30, 1910, but no demand was made to renew the bond. Bayly refused to perform any services for the District after the expiration of the two-year period, August 1, 1907. The District relet the contract to the lowest bidder, and it is alleged that, by reason of Bayly's refusal to continue the work under the alleged renewed contract, the District was damaged in the sum of forty thousand, two hundred and eighteen dollars and forty-four cents, for which this suit was brought.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Francis H. Stephens,* Assistant, for the appellant:

1. The contract of suretyship should be construed in favor of the insured. *American Cred. Ind. Co.* v. *Athens Woolen Mills,* 34 C. C. A. 161, 92 Fed. 581; *Tibbetts* v. *Mercantile Credit Guaranty Co.* 73 Fed. 95; *American Bonding Co.* v. *Burke,* — Colo. —, 85 Pac. 692; *Tarboro Bank* v. *Fidelity & D. Co.* 126 N. C. 320; *Jackson* v. *Fidelity & C. Co.* 75 Fed. 359; *Missouri, K. & T. Trust Co.* v. *German Nat. Bank,* 77 Fed. 119; *Ætna Ins. Co.* v. *J. R. Crowe Coal & Min. Co.* 154

Fed. 545; *American Surety Co.* v. *Pauly,* 170 U. S. 133; *American Surety Co.* v. *Pauly,* 170 U. S. 160.

2. The bond should be construed liberally in favor of the insured, because founded on a valuable consideration, and because it is in the regular line of the company's business. *Mauran* v. *Bullus,* 16 Pet. 528; Walker, Fidelity Bonds, p. 4; *Walker* v. *Holtzclaw,* 57 S. C. 459; *United States Fidelity & G. Co.* v. *First Nat. Bank,* 233 Ill. 475; *Cowles* v. *United States Fidelity & G. Co.* 32 Wash. 120; *Guaranty Co.* v. *Mechanic's Sav. & T. Co.* 80 Fed. 772.

3. If neither of the above reasons is good in law, then the bond is not ambiguous on its face, and should be construed fairly as to its intent and meaning. *Tarboro Bank* v. *Fidelity & D. Co.* 128 N.. C. 366; *Read* v. *Bowman,* 2 Wall. 591; *Guaranty Co.* v. *Pressed Brick Co.* 191 U. S. 416; *Davis* v. *Wells,* 104 U. S. 159.

4. The contract of Bayly with the District is incorporated into the bond by reference, and becomes a part of the bond as much as if set forth *verbatim.* *Bank* v. *Insurance Co.* 95 U. S. 673; *American Bonding Co.* v. *Pueblo Invest. Co.* 80 C. C. A. 97, 9 L.R.A.(N.S.) 557, 150 Fed. 17; *Peake* v. *United States,* 16 App. D. C. 415; *Westervelt* v. *Mohrenstecher,* 34 L.R.A. 477, 76 Fed. 118; *Humboldt* v. *Wennerhold,* 51 Cal. 528; *New Hampshire Bank* v. *Willard,* 10 N. H. 210; *Finley* v. *Lynn,* 6 Cranch, 238; *United States* v. *Maurice,* Fed. Cas. No. 15,747; *United States* v. *Tillotson,* Fed. Cas. No. 16,524; *Forst* v. *Leonard,* 112 Ala. 296; *Mackenzie* v. *School Trustees,* 72 Ind. 189; *Jordan* v. *Kavanaugh,* 63 Iowa, 52; *State* v. *Tiedman,* 69 Mo. 515; 2 Parsons, 503; *Watson* v. *O'Neill,* 14 Mont. 197; *Jordan* v. *Kavanaugh,* 63 Iowa, 152; *New York* v. *New York Refrigerator Co.* 82 Hun, 553; *Kimball* v. *Baker,* 62 Wis. 526.

5. The surety is liable to the same extent as his principal. *Benjamin* v. *Hillard,* 23 How. 149; *Cage* v. *Cassidy,* 23 How. 109; 2 Brandt, Suretyship & Guaranty § 751; *Camden* v. *Ward,* 52 Atl. 392; *Essex* v. *Murray,* 68 S. W. 736; *Union Trust Co.*

v. *City Traction Co.* 185 Iowa, 219; *Haney Co.* v. *Medary,* 101 N. W. 929.

6. The law will enforce an option in the same manner as any other contract. *Willard* v. *Tayloe,* 8 Wall. 557; *Brown* v. *Slee,* 103 U. S. 828; *Peters* v. *Bain,* 133 U. S. 670, 12 Comp. Dec. 466; *Railroad* v. *Bartlett,* 3 Cush. 224; *Welchman* v. *Spinks,* 5 L. T. (N. S.) 385; *Warner* v. *Willington,* 3 Drew. 523; *Old Colony R. Co.* v. *Evans,* 6 Gray, 25; *Willard* v. *Tayloe,* 8 Wall. 557; *Brown* v. *Slee,* 103 U. S. 828.

*Mr. Edgar H. Gans, Mr. Charles A. Douglas, Mr. Gibbs L. Baker, Mr. Thomas Ruffin,* and *Mr. Hugh H. Obear,* for the appellee:

1. When the words of the condition are general and indefinite as to the time during which the surety shall remain liable, if there is a recital in the bond specifying the time during which the prescribed duty is to be performed by the principal, the general words will be limited by the recital, and the surety will be liable only for the time specified in the recital. *Lord Arlington* v. *Merrick,* 2 Wms. Saund. 403; *Liverpool Waterworks Co.* v. *Atkinson,* 6 East, 507; *Peppin* v. *Cooper,* 2 Barn. & Ald. 431; *Bamford* v. *Iles,* 3 Exch. 380; *Wardens of St. Saviour* v. *Bostock,* 2 Bos. & P. N. S. 175; *Hassell* v. *Long,* 2 M. & S. 362; *Kitson* v. *Julien,* 4 El. & Bl. 854; *Napier* v. *Bruce,* 8 Clark & F. 470; *Miller* v. *Stewart,* 9 Wheat. 680; *United States* v. *Kirkpatrick,* 9 Wheat. 720; *United States* v. *West,* 8 App. D. C. 59; *Dunham* v. *Johnson,* 85 Minn. 268; *State* v. *Powell,* 40 La. Ann. 241.

2. A second thought which might be suggested as a sufficient answer to the claim of the District of Columbia against this appellee is that, at the time the bond was entered into and the fidelity company's duties and obligations fixed, there was a contract between Bayly and the District for a period of only two years from August 1, 1905.

3. A third ground for holding that the contract of the surety company was limited to two years is further to be found when

the language of the bond and contract with reference to the "renewal period" is properly construed.  It will be seen that it was clearly the intention of the parties that the two-year contract should constitute the contract that was then entered into, and they contemplated the entering into a new and definite contract at a future day.  Under all the authorities a renewal contract is in a legal sense a new contract.  Frost, Guaranty & Insurance, sec. 42; *Rutgers* v. *Hunter,* 6 Johns. Ch. 215; Lord Hardwicke in *Furnival* v. *Crew,* 3 Atk. 83; *Worthington* v. *Lee,* 61 Md. 530; *Tarrebaumn* v. *Bloomingdale,* 58 N. Y. Supp. 235; *Spondour* v. *Mulloy,* 21 Ind. App. 287; *De Jernette* v. *Fidelity & C. Co.* — Ky. —, 33 S. W. 828; *Brunswick* v. *Harvey,* 114 Ga. 733; *Quinn* v. *Valiquette,* 80 Vt. 434; *Kollock* v. *Scribner,* 98 Wis. 110; *Fasnacht* v. *Winkleman,* 21 La. Ann. 727; *Brewer* v. *Thorpe,* 35 Ala. 9; *Knowles* v. *Cuddleback,* 19 Hun, 590.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Plaintiff in the declaration specifically bases its right of recovery upon what it calls in the first count the renewed contract.  It is alleged that on "the thirtieth day of April, 1907, the Commissioners of the District of Columbia, exercised the privilege of renewing said contract and did renew the same for a period from August 1st, 1907, to June 30, 1910."  In the second count it is alleged that plaintiff, through its proper officers, on April 30, 1907, exercised the right of continuing said contract in force for the further period of two years and eleven months.

It will be observed that, whether the exercise of the option by plaintiff be regarded as a renewal or continuation of the original contract, the recovery sought is for damages alleged to have been sustained subsequent to the expiration of the original contract period of two years.  The only question, therefore, presented by this appeal is, whether the exercise of the option by plaintiff, without concurrent action by the surety company, ex-

tended the bond for the further period of two years and eleven months.

We are familiar with the old rule of strict construction in favor of the surety, based upon the underlying principle that formerly parties became sureties, not for hire, but as a matter of accommodation, usually lending their names through motives of friendship; and hence a surety obligation would be construed most strongly in their favor. But the rule of *strictissimi juris* has no application to surety companies organized for the purpose of conducting an indemnity business at established rates of compensation. *United States Fidelity & G. Co.* v. *Golden Pressed & Fire Brick Co.* (*United States Fidelity & G. Co.* v. *United States*) 191 U. S. 416, 48 L. ed. 242, 24 Sup. Ct. Rep. 142. But the question before us is neither one of liberal nor of strict construction. It can be answered from the express language of the bond and contract, without the aid of technical rules of construction. The original contract expressly provided that it should extend for a period of two years, at the expiration of which time plaintiff had the option of renewing it. A renewal is defined in Anderson's Law Dictionary as "the substitution of a new right or obligation for another of the same nature." Bouvier defines it as "a change of something old for something new." Following this distinction it has been held that where there is a covenant to renew a lease the lessor is bound to make a new lease to either the lessee or his assignee. *Rutgers* v. *Hunter,* 6 Johns. Ch. 215; *Furnival* v. *Crew,* 3 Atk. 83; *Worthington* v. *Lee,* 61 Md. 530.

Closely analogous to the case at bar are numerous decisions where sureties have obligated themselves for the faithful performance by the lessee of a lease containing a renewal option. So far as we are advised, it has been held that the surety was not bound for the faithful performance of the covenants during the renewed term, unless he had specifically obligated himself by the terms of the bond. In *Fasnacht* v. *Winkelman,* 21 La. Ann. 727, plaintiff leased defendant Winkelman certain property for the period of one year from August 1, 1865, with the

privilege of renewing the lease for four years more at the same rental and under the same conditions.   One Heuer became surety.   In the bond he declared himself bound "jointly and *in solido,* with and as security for the said lessee, for the punctual payment of the rent herein stipulated, and of all costs and damages resulting from any violation of any of the conditions of the foregoing lease, hereby consenting to be bound as if he were the principal obligor herein, and renouncing the plea and benefit of discussion or division granted by law to sureties." Notice of the renewal of the lease was given, and upon nonpayment of the rent during the renewal period suit was brought against both principal and surety.   The surety answered separately, alleging that his responsibility ceased on July 31, 1866, and was not renewed. · The court, upholding this contention, said: "There is no proof that Heuer consented to the extension or renewal of the lease; but plaintiffs say that by his contract he was as much their tenant as Winkelman, and that the acts of the latter were his acts, of which he is not permitted to plead ignorance.   This position is untenable.   The lease was made to Winkelman as the tenant, and Heuer became has surety, bound, it is true, as if he were the principal obligor in the lease, but only for the term of that lease, to wit, one year. The faculty of renewing was a privilege or right, to be exercised by the lessee upon a given condition, and not an obligation assumed by the surety.   He was liable to the same obligations as the debtor himself * * * during the lease, but he did not agree to be bound in the renewed or extended lease by the giving of the required notice to the lessors by the lessee. The clause in relation to the renewal only bound the lessors and the lessee to the same price and conditions, if the lease were renewed, as contemplated.   The consent of the surety was necessary to bind him on the extended lease."   It is immaterial whether the option be that of the lessor or the lessee.   The nonliability of the surety, where he has in no way concurred in the renewal, is the same.   *Brewer* v. *Thorp,* 35 Ala. 9; *Knowles* v. *Cuddeback,* 19 Hun, 590; *Liverpool Waterworks Co.* v. *Atkinson,* 6 East, 507, 2 Smith, 654.

The familiar rules that a bond should be construed fairly as to its intent and meaning; that where a contract is referred to in the bond it becomes a part of the bond, and that the surety is liable to the same extent as his principal, are well understood. The difficulty here is that the liability of the surety company had ceased before the alleged default occurred. The original contract had expired. Plaintiff and Bayly were not even proceeding under a renewed contract, as in the cases of the leases cited. Bayly ceased to perform any services on the date of the expiration of the original contract, which specifically provided that it was given "for the period of two (2) years, beginning August 1, 1905." It is not contended that any default occurred within that time. The limitation of time fixed in the contract and specifically mentioned in the recital of the bond is controlling. It measured the life of the bond. The obligation assumed was for the fulfillment of the conditions of the contract during that period, and did not include a renewal contract which, in contemplation of law, "constitutes a separate and distinct contract for the period of time covered by such renewal." *De Jernette* v. *Fidelity & C. Co.* 98 Ky. 558, 33 S. W. 828; *Hartford F. Ins. Co.* v. *Walsh,* 54 Ill. 164, 5 Am. Rep. 115; *Brady* v. *Northwestern Ins. Co.* 11 Mich. 425.

We are cited to certain decisions of the Supreme Court in cases involving Government contract for public works, where the bonds were executed in compliance with the conditions of special statutes providing, in some instances, that the bond shall be given to secure the Government against liability for mechanic's liens and, in other instances, against breach of conditions arising from changes agreed upon between the contractor and the Government subsequent to the execution of the original contract and the giving of the bond. In these cases the bondsmen obligated themselves, both by reference to the statute and by express covenant in the bond, that the contractor "should fulfill all the conditions and covenants of his contract, whatever changes in or additions to such contracts might thereafter be made; and second promptly make payment to all persons supplying him labor and materials in the prosecution of the work."

Vol. XXXIX.—8.

*United States Fidelity & G. Co.* v. *Golden Pressed & Fire Brick Co.* (*United States Fidelity & G. Co.* v. *United States*) 191 U. S. 416, 48 L. ed. 242, 24 Sup. Ct. Rep. 142; *United States use of Hill* v. *American Surety Co.* 200 U. S. 197, 50 L. ed. 437, 26 Sup. Ct. Rep. 168.

A distinction having an important bearing upon the question before us is presented in the *Pauly Case,* 170 U. S. 133, 144, 42 L. ed. 977, 981, 18 Sup. Ct. Rep. 552, where the court, through Mr. Justice Harlan, said: "If, looking at all its provisions, the bond is fairly and reasonably susceptible of two constructions, one favorable to the bank and the other favorable to the surety company, the former, if consistent with the objects for which the bond was given, must be adopted, and this for the reason that the instrument which the court is invited to interpret was drawn by the attorneys, officers or agents of the surety company." The converse of this rule of construction, if such it may be called, would seem to be applicable to the present case, inasmuch as both the contract and bond were prepared "by the attorneys, officers or agents" of the District of Columbia.

The judgment is affirmed with costs, and it is so ordered.

*Affirmed.*