ELLSWORTH P. BAYLOR, JR., PLAINTIFF-RESPONDENT, v. THE STATE MUTUAL LIFE ASSURANCE COMPANY OF WORCESTER, MASSACHUSETTS, DEFENDANT-APPELLANT.

Submitted May 25, 1934—Decided September 27, 1934.

For the respondent, *Carey & Lane.*

For the appellant, *Perkins, Drewen & Nugent.*

The opinion of the court was delivered by

PERSKIE, J. On January 23d, 1930, appellant issued its policy No. 369614, in the sum of $11,000 insuring the life of the respondent. In consideration of a special premium paid to it, appellant also granted the respondent total and permanent disability benefits. Respondent paid the first and only premium thereon. The grace period of thirty-one days expired on August 23d, 1930. Respondent brought suit against appellant alleging that on August 15th, 1930, he became totally and permanently disabled. Appellant answered, and among other defenses, set up the defense that respondent failed to furnish due proof of the alleged disability to the appellant while no premium was in default. To this answer respondent replied that he was both mentally and physically totally disabled, and thus incompetent to attend to his affairs and to give notice or proof of disability.

The proofs disclose (*Exhibit P-4*) that respondent's brother wrote appellant on June 1st, 1932, advising it of the respondent's total disability as of August 15th, 1930.

Respondent's contention below, as here, is in substance that under the proofs of the instant case, it became a jury question as to whether he was legally excused from giving notice or proof of disability prior to June 1st, 1932, and that appellant was estopped from denying liability in the premises.

The pertinent provisions of the policy are as follows:

"If the insured while no premium is in default under the policy and disability agreement shall furnish due proof that, before reaching the age of sixty years, because of accident or disease he has become totally and permanently disabled as hereinafter defined, and that such disability, or the cause thereof, was sustained or contracted after the date hereof, the company agrees as follows:

"(1) To waive the payment of all premiums becoming due under the policy and disability agreement after the commencement of such total disability and during its continuance.

"(2) To pay to the insured (or the beneficiary of record if such disability is caused by insanity) a monthly income of one per cent. of the face amount of this policy, exclusive of any paid up additions. Such payments shall begin as of the date of the commencement of such disability and shall continue monthly thereafter during the continuance of such total disability, until the maturity of the policy."

And:

"Disability shall be deemed to be total if the assured has become wholly, continuously and permanently unable to perform any work, mental or manual, or to engage in any occupation or business for compensation, remuneration or profit; and such total disability shall be presumed to be permanent when it is present and has existed continuously for not less than ninety consecutive days."

The proof clearly indicates, and it is not denied or controverted, that respondent, on August 15th, 1930, ascertained that he had become afflicted with what is known as Grave's disease—exopthalmic goiter. The proof further tends to indicate that as a result of this affliction he was and continued to be a very sick man. He was operated on and had two lobes

of the thyroid gland removed, leaving only the isthmus. He still requires medical stimuli, care and attention. In pursuance of the frequent symptoms of this disease respondent was highly nervous, excitable and delusional. He was not able to speak coherently and at times acted irrationally. Appellant, however, developed proof that respondent traveled, was incarcerated in jail for issuing worthless checks; did odd pieces of work, &c. It was also developed that respondent had a disability benefit policy with the Penn Mutual Life Insurance Company of Philadelphia. That respondent signed proof of a claim for disability benefit with the latter company, arising out of the same affliction. Respondent did not deny his signature to this proof of claim but denied having any knowledge of his having signed it; he said he signed whatever papers he was asked to sign. Incidently, after investigation the general manager of the Penn Mutual Life Insurance Company of Philadelphia wrote stating that they were advised that the records disclosed that respondent was insane. Although that statement was subsequently retracted or explained by the supervisor of claims of the company, as being founded on error, nevertheless they did not contest respondent's claim for disability benefits; in fact, they are paying the benefits thereunder.

Notwithstanding the proofs tending to indicate a contrary result, nevertheless, there was ample proof tending to indicate, as apparently the jury did find, that respondent was both mentally and physically totally disabled.

At the end of respondent's proofs a motion for nonsuit was made on the ground of failure on the part of the respondent to give due notice or proof of his disability while no premium was in default and the further ground that there was no proof that it was not reasonably possible for respondent to give notice or proof thereof to appellant. This motion was denied.

Appellant, by stipulation, then offered *Exhibit D-9* in evidence. This exhibit consists of an examination of the plaintiff before trial. It consisted of a general inquiry of respond-

ent's illness, treatments thereof, and his general activities and conduct in the premises, &c. Upon the admission of *Exhibit D-9,* as indicated, appellant made a motion for a directed verdict on the same grounds urged in support of the motion for a nonsuit. This was likewise denied.

The learned trial judge below submitted the case to the jury. He charged them, *inter alia,* as follows:

"Now you must ask yourselves the question was this plaintiff at the time of the lapsing of the policy, to wit, in the month of August, 1930, on the fifteenth day of that month, so utterly incapacitated, mentally and physically, that it was not reasonably possible for him to notify the company and make his proof of claim; and did that handicap or incapacity extend over the period of twenty months until the company was finally notified of his disability; was it reasonably possible at any time during that period of twenty months for young Baylor to have made his proof of claim and to have notified the company of his disability? Because if it was reasonably possible for him to do so, then, of course, it was his duty to do it, and he would be precluded from recovering if he failed in that respect."

The refusal to nonsuit, as well as to direct a verdict, and the alleged illegal admission of the correspondence—exclusive of the first six letters, some of which passed between the insured's brother and the company, and others that passed between respective counsel of appellant and respondent, constitute the grounds of this appeal.

If it was proper for the court to deny the motions of nonsuit and to direct a verdict, we are clearly of the opinion that there was ample testimony, as already indicated, to support the finding of the jury.

The major question requiring decision, therefore, by this court is whether the insured is entitled to disability payments, under the proofs and particular provisions of the policy, when, as here, he became both mentally and physically disabled during the grace period for the payment of the next premium, and by reason of such disability could not, and

did not, give notice or proof thereof to the insurer until after the grace period expired; in the instant case, almost twenty-two months thereafter.

The question thus presented finds no parallel in our state. With us it is one of first impression. The authorities elsewhere are not in accord. It will serve no useful purpose to recollate these divergent authorities. Suffice it to point out that our study of the subject leads us to the observation that there are two distinct philosophies underlying these contrarieties. They are expressed, substantially, as follows: (1) That a person will be excused from the performance of a duty imposed by law when he is prevented by unavoidable accidents, without his fault, from so doing. But where a person by express contract undertakes to do an act, not impossible or unlawful at the time, neither inevitable accident nor other unforseen contingency not within his control will excuse him. *The reason being that he might have provided against them by contract.* (2) That it would be a harsh rule to hold that where a person becomes physically and mentally incapacitated before the next payment of his policy becomes due and while still in force, that the occurrence of the very contingency he was insuring against should deprive him or his beneficiaries of the benefit of his contract.

The basis underlying the first holding raises a purely legal question and would lead to the result, in the case at bar, that the appellant's motions (of nonsuit and directed verdict) should have prevailed. The basis underlying the second holding would require that the question of the insured's mental and physical disability to give the notice or proof thereof to the insurer would depend upon the facts of each particular case and would therefore lead to the result reached in the instant case, *i. e.,* of submitting the question thus presented to the jury.

The Supreme Court of our state in the case of *Revell* v. *Columbian Protective Association,* 9 *N. J. Mis. R.* 1311, on a policy which provided that: "* * * failure to give notice within the time provided in the policy shall not invali-

date the claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible," held that:

"Generally, a default in giving the written notice required by the policy is excused by the physical incapacity of the insured. 33 *Corp. Jur.* 15." And "what is reasonably possible depends upon all the circumstances of the case and depends, of course, upon the opportunities which were available. *Metropolitan Casualty Co.* v. *Johnston,* 247 *Fed. Rep.* 65."

While the facts in the cited case are not parallel to those of the instant case, nevertheless, the principle of law pronounced therein appears to be sound and convincing. Moreover, there are still further established principles of law in our state upon which a sound, legal and just result may be reached in the case at bar. Our courts have always looked with disfavor on forfeiture clauses contained in policies of insurance. This court, in the case of *Hampton* v. *Hartford Fire Insurance Co.,* 65 *N. J. L.* 265 (at *p.* 267), held:

"Forfeitures of this class are not favored in the law. The rule as to them in our state is settled. Our courts say: 'It has become a settled rule in the construction of contracts of insurance, that policies of insurance will be liberally construed to uphold the contract; and conditions contained in them which create forfeitures will be construed most strongly against the insurer and will never be extended beyond the strict words of the policy.' *Carson* v. *Jersey City Insurance Co.,* 14 *Vr.* 300; *Snyder* v. *Insurance Co.,* 30 *Id.* 544."

"The court will never seek for a construction of a forfeiture clause in a policy which will sustain it, if one which will defeat it is reasonably deducible from the terms or words used to express it. *State Insurance Co.* v. *Maackens,* 9 *Vr.* 564, 572; *Ripley* v. *Aetna Insurance Co.,* 29 *Barb.* 552; *Rann* v. *Home Insurance Co.,* 59 *N. Y.* 387; 1 *Joyce Ins.,* § 220; *Hartford Insurance Co.* v. *Walsh,* 54 *Ill.* 164; *May Ins.* (*2d ed.*) § 170."

These sound principles of law have been steadfastly adhered to by our courts. Applying them to the proofs of the instant

case leads us to so construe the disability provisions of the instant policy so that the occurrence of the very contingency that the insured was insuring against shall not deprive him or his beneficiaries of the benefit of his contract. Accordingly, we are of the opinion that the case was properly submitted by the trial judge below to the jury.

We have examined the letters that passed between the parties and their respective counsel and the admission of which forms the remaining ground of appeal. We do not desire to be understood as holding that all were admissible; we do not find it necessary to so decide.

The loyal but partisan views of counsel for their respective clients are traditions well known to juries. Every asserted view in behalf of the respondent was with equal force and effect challenged and denied by appellant. Moreover, the views of the respective parties and those of their counsel as expressed in the letters complained of were undoubtedly the views which each counsel orally argued before the jury. We are clearly of the opinion that no substantial rights of the appellant were injuriously affected by their admission.

Judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.

*For reversal*—None.