HARVEY FOSTER *et al.*, Plaintiffs-Appellants, *v.* CRUM AND FORSTER INSURANCE COMPANIES, d/b/a The North River Insurance Co., Defendant-Appellee.

Fifth District No. 75-322

Opinion filed March 25, 1976.

G. MORAN, J., dissenting.

Thomas A. LeChien, of LeChien and Hantla, Ltd., of Belleville, for appellants.

Wagner, Bertrand, Bauman & Schmieder, of Belleville, for appellee.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

This is an appeal from a summary judgment entered in the Circuit Court of St. Clair County in favor of defendant in a suit on an insurance policy issued by defendant to plaintiffs.

In 1971, the General Assembly enacted the Compensation of Auto-

mobile Accident Victims Act (Ill. Rev. Stat. 1971, ch. 73, par. 1065.150 *et seq.*), commonly known as the "no fault" insurance act. Pursuant to that Act and Rule 35.01 promulgated by the Director of Insurance, defendant sent plaintiffs a letter, dated December 1, 1971, advising them of the new law, explaining the provisions of Basic Personal Injury Protection (PIP) and briefly explaining an optional program, Excess Personal Injury Protection. The letter also transmitted a three-page endorsement for basic PIP coverage as required by the Act. The letter also contained a brief description of excess PIP coverage including the following, "These benefits are payable after depletion of your basic coverage and apply only to the named insured and relatives living in the same household * * * 4. Survivors benefits on the basis of 85% of the average weekly income the deceased earned during the 52-week period immediately preceding the accident and subject to a limit of $150 per week for 260 weeks." While other benefits under excess PIP are merely additional to benefits under basic PIP, the survivors benefits are contained solely in the excess PIP coverage.

Plaintiffs Harvey and Virginia Foster exercised the option to purchase excess PIP coverage by completing the enclosed form, naming themselves as named insureds and listing Russell Foster, their unmarried son living in their household, as an operator, thereby an additional insured under the terms of the policy. Sometime thereafter, plaintiffs received the excess PIP endorsement from defendant. Survivors benefits under the endorsement were limited to a surviving spouse dependent upon deceased for income and if no spouse, to surviving minor children dependent upon deceased for income.

After significant portions of the Act were declared invalid by the Supreme Court (*Grace v. Howlett*, 51 Ill. 2d 478, 283 N.E.2d 474 (1972)), and the Act was thereafter repealed, defendant renewed plaintiff's policy in its same form. In 1974, Russell Foster was killed in an automobile accident. After defendant refused to pay survivor's benefits to plaintiffs this action was brought. Plaintiffs alleged that they bought the excess PIP coverage solely on reliance upon the broader language of coverage contained in defendant's letter of December 1, 1971, and that defendant should be bound by its representation contained therein. The complaint also alleged that defendant's refusal to pay the claim was vexatious and asked for attorney's fees. The claim for attorney's fees has since been abandoned. Defendant filed a motion to dismiss the action alleging that the December 1 letter and the policy subsequently issued were in compliance with the Compensation of Automobile Accident Victims Act and that the letter did not constitute an offer of the cover-

age contained therein but was merely an "invitation" to policyholders to obtain the excess coverage. The motion was denied.

Plaintiffs filed a motion for summary judgment realleging the matters contained in the complaint. Defendant filed a motion for summary judgment realleging the matters contained in its motion to dismiss. Defendant's motion was granted by the court. In its order the following language appeared, "The policy in this case was issued approximately two (2) years prior to the death of Russell Foster, and the plaintiff had possession of the original policy. Policies of insurance are contracts in writing, so that a party cannot be heard to say that he did not know what was in the contract."

On appeal, plaintiffs contend that defendant is bound by the plain meaning of representations made by it where the representation affords coverage broader than that contained in the policy. Plaintiffs also contend that defendant did not comply with Rule 35.01 (section 5) of the Illinois Director of Insurance requiring the insurer to include with its "offer" of excess PIP coverage "a clear and appropriate description to the policyholder of the benefits offered and the consideration contemplated." Defendant contends that the letter was in compliance with Rule 35.01, that it was merely an invitation by the company to the plaintiffs to seek the coverage and contact an independent insurance agent about any questions, that the company is not bound by the letter not attached to the policy, and that the insured has a duty to know the contents of his insurance policy. In their reply brief, plaintiffs note that by failing to deny allegations in the complaint, defendant has admitted that plaintiffs purchased the policy in reliance upon the December 1, 1971, letter. Both parties agree that the unique posture of the case makes it one of first impression in Illinois.

We have carefully reviewed the record and find therein answers to most of the questions raised by the parties in the trial court and the briefs. The letter of December 1, 1971, did not contain a "clear and appropriate" description of survivor's benefits under excess PIP. On its face, the letter appears to offer survivors benefit coverage broader than that required by the Act and broader than that contained in the endorsement subsequently transmitted to plaintiffs and the policy issued at the next renewal date. Although defendant contends that no company offered broader coverage than that contained in its policy, defendant has not attempted to offer evidence to support its allegation. The Act specifies that the coverage contained in the instant policy is minimum coverage, thus allowing companies to provide more liberal benefits if they so desire. (Ill. Rev. Stat. 1971, ch. 73, par. 1065.150(b).) Further,

under the language of Rule 35.10, the letter constituted an offer to the insureds to purchase the excess PIP coverage, contrary to defendant's position on this appeal. The return by plaintiffs of the attached form constituted an acceptance of the offer proposed and a contract was made. Had this accident occurred in the effective period of the endorsement, a serious question would have arisen whether defendant was liable under the terms of the offer.

■■ This policy, however, was apparently renewed about 6 months after defendant's offer of excess PIP coverage, and presumably was renewed again about 6 months prior to the accident. Plaintiffs had in their possession at the time of the first renewal the clear three-page excess PIP endorsement which contained the more restrictive language here complained of in a conspicious position on the first page. Upon subsequent renewal, plaintiffs had before them the policy containing the same language and their renewal of the policy formed a new contract based upon the language contained therein. Plaintiffs do not contend that the language of the policy was ambiguous as to coverage. Although we recognize, as plaintiffs assert, that laymen may not, as a common practice, read insurance policies, we cannot excuse plaintiffs from their burden of knowing the contents of insurance policies and bringing alleged discrepancies to the attention of the company. *Spence v. Washington National Insurance Co.*, 320 Ill. App. 149, 50 N.E.2d 128 (1943); *Richer v. Catholic Order of Foresters*, 344 Ill. App. 200, 100 N.E.2d 807 (1951).

■■ Plaintiffs had ample opportunity over the 2½ years prior to the accident to learn the limits of their coverage and seek to extend it with defendant or some other company if they felt it inadequate. They cannot now be heard to complain.

The judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

The majority holds that the insurer's representations to the plaintiffs in the letter dated December 1, 1971, set the terms of the original policy of insurance, but did not affect the terms of the renewed policies. The law in Illinois, however, is that the provisions of a renewed policy are regarded as identical to the provisions of the original policy unless the insured and insurer have expressly agreed to a change. (See *Palmer v. Bull Dog Auto Insurance Association*, 294 Ill. 287, 128 N.E. 499 (1920); *Hartford Fire Insurance Co. v. Walsh*, 54 Ill. 164 (1870); Annot., 91 A.L.R.2d 546, 549 (1963); 43 Am. Jur. 2d *Insurance* §384 (1969).) The insurer's merely sending to the plaintiffs a renewed policy which indi-

cated a reduced scope of coverage, without calling the plaintiffs' attention to the reduction, was not enough to change the terms of the original policy. (See Annot., 91 A.L.R.2d 546, 549 (1963).) The plaintiffs certainly did not expressly agree to a reduction in the scope of coverage. Thus the plaintiffs' son was covered by the renewed policy, just as he was covered by the original policy, and a judgment should have been rendered for the plaintiffs.

Then, too, the majority bases its rationale on a ground not advanced in the trial court. Although the need for a just result and for the maintenance of a sound and uniform body of precedent will occasionally require disposition of an appeal on grounds not raised by the parties (*Hux v. Raben,* 38 Ill. 2d 223, 230 N.E.2d 831 (1967)), no such need exists in this case.