FLORAL CONSULTANTS, LTD., Plaintiff-Appellant, v. THE HANOVER INSURANCE COMPANY et al., Defendants-Appellees.

First District (1st Division)   No. 83—2632

Opinion filed October 15, 1984.

Cherry & Flynn, of Chicago (Peter Flynn and Bruce Rose, of counsel), for appellant.

Paul J. Wisner, Ltd., and Garbutt and Jacobson Associates, both of Chicago (Richard D. Heytow and Edward Berman, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Floral Consultants, Ltd., filed a class action suit against defendants, the Hanover Insurance Company (Hanover), Calfa Pac-

chini Insurance, Inc. (Calfa), and George J. Pistoresi (Pistoresi), seeking to enjoin defendants from the continued use of an alleged misleading sales brochure in the selling of Han-O-Flora insurance policies and to recover damages suffered by it and other members of its class as a result of their reliance on the brochure's alleged fraudulent misrepresentations. The trial court granted defendants' motion to dismiss for failure to state a claim upon which relief can be granted and allowed plaintiff 21 days within which to file an amended complaint. Subsequently, the trial court granted Hanover's motion to strike certain counts of plaintiff's verified amended complaint and dismissed Hanover as a defendant in the suit. Shortly thereafter, on a similar motion filed by Calfa and Pistoresi, the trial court struck the remaining counts of the amended complaint and dismissed the lawsuit. On appeal, plaintiff contends that the trial court erred in holding that: (1) as a matter of law, plaintiff's possession of the actual insurance policy precluded his right to rely on the sales brochure and to predicate an action for fraud or negligence on the brochure; (2) defendant's sales brochure and insurance application were not misleading; and (3) Pistoresi was not acting as Hanover's agent at the time he sold the insurance policy to plaintiff. A determination as to class certification was not made by the trial court and is not at issue on this appeal. For the reasons that follow, we affirm the trial court.

The facts giving rise to this action are undisputed. On March 16, 1981, Pistoresi, an insurance agent, met with Pizzo, president of plaintiff corporation, and presented Pizzo with a sales brochure and application for Han-O-Flora insurance, sold by Calfa and underwritten by Hanover. The brochure consisted of a two-page typewritten document which contained the following introductory language:

"COMPARE *** FOR IT'S YOUR ASSETS YOUR [sic] SEEKING TO PROTECT. WHEN YOU COMPARE INSURANCE COVERAGE, CONSIDER THE FOLLOWING:

1. The TERMS and CONDITIONS for Coverage being provided.

2. The Quality of the Insurance Carrier underwriting Coverage, and its ability to perform in your behalf.

3. The Professional Expertise and Attitude of the Agent with whom you shall be dealing with [sic], considering whom the Agent represents.

4. Cost and Convenience of Payment.

THE FOLLOWING REPRESENTS A COMPARISON OF DIFFERENCES WORTH NOTING, THAT CAN AFFECT YOU, IN COMPARING THE INSURANCE PACKAGE PROGRAMS

DESIGNED BY TWO INSURANCE CARRIERS FOR THE FLORA-CULTURE INDUSTRY."

The brochure then presented a comparison between certain provisions of the Han-O-Flora policy and the Flor-a-Matic policy. The insurance application presented seven coverage categories, under each of which were subcategories with a corresponding space to indicate the dollar amount of coverage desired for each. Other than Pistoresi's assurances to Pizzo that the sales brochure and application accurately depicted and described the Han-O-Flora coverage, Pistoresi made no additional verbal representations regarding the coverage. In reliance upon the brochure and application, Pizzo purchased the Han-O-Flora insurance coverage, effective for one year, commencing March 16, 1981. Approximately three months later, Pizzo received the actual insurance policy, which consisted of a 27-page "Special Businessowners Policy" and a one-page "Han-O-Flora Endorsement" which served to tailor the general coverage provisions to the more specialized needs of the floral industry. On pages four and five of the policy, a section entitled "PERILS AND EXCLUSIONS," the headline for which was printed in large bold-face capital letters, set forth an indented, itemized outline of 16 exclusions, printed in capital letters. The exclusion pertinent to the facts at bar states:

"THE COMPANY SHALL NOT BE LIABLE FOR LOSS:
* * *

2. CAUSED BY OR RESULTING FROM POWER, HEATING OR COOLING FAILURE OR DUE TO CHANGE IN TEMPERATURE OR HUMIDITY UNLESS THE CHANGE RESULTS FROM PHYSICAL DAMAGE TO THE BUILDING OR TO EQUIPMENT CONTAINED THEREIN CAUSED BY A PERIL NOT OTHERWISE EXCLUDED; * * *."

On or about January 9, 1982, due to extreme cold weather conditions, plaintiff's heating system malfunctioned, resulting in the destruction of plaintiff's entire inventory of growing plants. Plaintiff's timely claim for damages in the amount of $3,661.60 was denied by Hanover on the grounds that it fell within exclusion No. 2 of the policy. In filing its claim for injunctive and other relief, plaintiff argued that because the brochure did not contain the above exclusion, and the actual policy was not available at the time the application was executed, plaintiff was fraudulently induced to purchase a policy which it believed covered all perils to growing crops. In response, defendants argue that the brochure was never meant to be a synopsis of the policy, it was merely an invitation to compare specific differences between two competitors; that plaintiff never requested a copy of the

actual policy prior to making its decision; and that, upon receiving the policy in June, plaintiff had ample time to review it and to seek additional coverage if necessary.

We first address plaintiff's contention that the trial court erred in holding that, because it was in possession of the insurance policy for several months prior to the cold weather damage, it was bound, as a matter of law, to know the contents of the policy and could not now complain that the policy did not contain the type of coverage it assumed it to contain. Plaintiff argues that this "rigid rule" is not the law in Illinois and that such a law would be unwise and contrary to public policy. Further, plaintiff contends that the insurance policy was a complex 27-page document which was not only unavailable at the time the contract was executed, but which defendants knew plaintiff would not read, and if it were read, no one would understand it and, consequently, would rely solely on the brochure and the application for a description of the coverage.

The law in Illinois regarding coverage disputes under insurance policies follows two distinct paths. The first concerns insurer-insured cases in which one of the parties attempts to deny the effectiveness of a part of the policy. In this situation, a duty is imposed upon the insured to have read the policy and to have informed the insurer of any discrepancy prior to the time of filing a claim. (*Hofeld v. Nationwide Life Insurance Co.* (1975), 59 Ill. 2d 522, 527, 322 N.E.2d 454; *Foster v. Crum & Forster Insurance Cos.* (1976), 36 Ill. App. 3d 595, 598, 345 N.E.2d 49; *County of Williamson v. Standard Accident Insurance Co.* (1961), 32 Ill. App. 2d 363, 366, 178 N.E.2d 149.) The second line of cases concerns the insured-agent relationship where, in order to prevail on his claim, the insured must prove that the agent negligently performed his duty to procure a specified policy. In this situation, while the insured's failure to read the policy may amount to contributory negligence, it does not operate as a bar to relief as a matter of law. *Black v. Illinois Fair Plan Association* (1980), 87 Ill. App. 3d 1106, 1111, 409 N.E.2d 549.

In the present case, plaintiff attempts to place its fact situation in the second line of cases and to apply the *Black* court's analysis to support his contention that because plaintiff had no absolute duty to read the policy, the trial court erred in dismissing the suit. In *Black*, the court addressed the question of the insurer's and agent's liability for issuing a defective fire insurance policy. After purchasing a house located adjacent to property already owned and occupied by them as their residence, plaintiffs contacted the insurance broker in order to procure fire insurance on the new property. In filling out the applica-

tion, the broker inserted plaintiff's residence address rather than the new address, and plaintiffs signed the application without noticing the error. When plaintiffs later received the actual policy, they glanced at it, but again failed to notice the mistake. As a result of the error, plaintiff's subsequent claim for damages resulting from a fire on his new property was denied. As these facts indicate, the situation presented in *Black* clearly follows the second line of cases wherein the agent has failed to follow the insured's instructions to procure a specific policy. In these circumstances, the insured's failure to detect the error does not serve to bar recovery as a matter of law. Instead, it becomes a question of contributory negligence for consideration in the determination of damages.

The facts in the present case are in distinct contrast to *Black*. Plaintiff does not allege that Pistoresi negligently performed his duty to procure a specific policy which it had requested. Pizzo ordered the Han-O-Flora policy on plaintiff's behalf, and Pistoresi procured the Han-O-Flora policy, a copy of which plaintiff received seven months prior to the cold weather damage. The problem arises because plaintiff never took the time to read the policy. He just assumed it provided him with the coverage he wanted, based upon the brochure. It is especially noteworthy that plaintiff does not claim that the brochure contained untrue statements. Rather, it claims fraud by omission of a provision it now considers relevant. In light of the fact that the brochure was merely an invitation to compare "differences worth noting," we do not find that the omission of the temperature-extreme exclusion was tantamount to fraudulent misrepresentation. Had Pizzo read the policy when he received it, he would have had no difficulty in ascertaining which perils were excluded. Contrary to plaintiff's allegations, the policy succinctly sets forth the exclusions under the boldface heading "PERILS AND EXCLUSIONS" on page four of the policy. There is no attempt to hide the exclusions under superfluous rhetoric or to bury them at the back of the policy. Based on these facts, we conclude that the present case follows the first line of insurer-insured cases and, accordingly, find *Foster v. Crum & Forster Insurance Cos.* (1976), 36 Ill. App. 3d 595, 345 N.E.2d 49, dispositive of the issue.

In *Foster*, defendant sent plaintiffs a letter advising them of the new no-fault insurance law, explaining the provisions of Basic Personal Injury Protection (Basic) as well as an optional program, Excess Personal Injury Protection (Excess). In addition, the letter contained a three-page endorsement for Basic and a brief description of Excess. Based on the letter and brief description, plaintiffs decided to pur-

chase the Excess coverage and, in doing so, named themselves and their son as the insureds. Shortly thereafter, plaintiffs received an endorsement for Excess which indicated that survivors' benefits were limited to a surviving spouse or, if no spouse, to surviving minor children of decedent. Plaintiff renewed the policy once in its same form. Subsequent to the renewal, plaintiff's son was killed in an automobile accident. Predicated upon the limitation provision in the endorsement, defendant refused to pay survivors' benefits to decedent's parents.

In their suit for payment of benefits, plaintiffs alleged that they purchased Excess in reliance upon the "broader language of coverage" contained in defendant's original letter and that defendant should be bound by those representations. In its order granting defendant's motion for summary judgment, the trial court stated, " 'The policy in this case was issued approximately two (2) years prior to the death of Russell Foster, and the plaintiff had possession of the original policy. Policies of insurance are contracts in writing, so that a party cannot be heard to say that he did not know what was in the contract.' " (36 Ill. App. 3d 595, 597.) In affirming the decision of the trial court, the appellate court acknowledged that if the accident had occurred in the effective period of the first endorsement, a serious question as to liability would have been presented because of the broader coverage offered in the original letter as opposed to that offered in the endorsement. However, because the policy was renewed twice before the accident and plaintiff had possession of the more restrictive endorsement at the time of each renewal, new contracts were formed at each renewal based upon the endorsement language. Thus, the court concluded that, "Although we recognize *** that laymen may not, as a common practice, read insurance policies, we cannot excuse plaintiffs from their burden of knowing the contents of insurance policies and bringing alleged discrepancies to the attention of the company." 36 Ill. App. 3d 595, 598.

Admittedly, the facts in the present case differ from those in *Foster* to some extent, particularly with respect to the renewals. However, we find that there is sufficient similarity between the situations to provide a framework for our analysis. In its attempt to dismiss the applicability of *Foster*, plaintiff focuses on the court's statement that if the accident had occurred prior to the renewal, the outcome may have been different. Plaintiff interprets this to mean that because there were no renewals in the present case, the outcome should be opposite that of *Foster*, where the appellate court affirmed the insurer's denial of benefits. We disagree with plaintiff's analysis for the primary reason that the initial documents presented by the insurer to

the insured for the purpose of inducing purchase were markedly different in each case. In *Foster*, plaintiffs were presented with a letter and a description of the policy, *i.e.*, offer to purchase. In our case, plaintiffs were presented with an invitation to compare "differences worth noting" between the two policies. Thus, the right to rely was present in the former and lacking in the latter. As the appellate court stated, the subsequent renewals in *Foster* negated reliance on the initial letter and placed the burden of knowledge of the policy contents on the insured. In the present case, there was no shift of reliance because the brochure was never meant to constitute an offer to purchase. Thus, the burden of knowledge was on the insured as soon as he had possession of the policy. The pivotal similarity between *Foster* and the present case lies in the fact that the insureds had possession of the actual policies in sufficient time to review them and to procure different or amended insurance coverage, if necessary. Illinois law clearly places a burden on insureds to know the contents of their policy when it is within their capabilities to do so. To hold otherwise would seriously undermine the sanctity of binding legal contracts. Accordingly, we concur with the trial court's holding that, as a matter of law, plaintiff is charged with knowledge of the contents of his policy and had no right to rely on the sales brochure or the application.

Our decision regarding plaintiff's right to rely obviates the need to discuss the remaining issues concerning alleged fraudulent misrepresentations in the brochure and the relationship between Calfa-Pistoresi and Pistoresi-Hanover. Therefore, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGLOON and CAMPBELL, JJ., concur.