**CLARENDON AMERICA INSURANCE COMPANY, Plaintiff,**

**v.**

**MIAMI RIVER CLUB, INC., d/b/a Centro Espanol, Abdon Grau, Jose Perdomo, Personal Representative of the Estate of Florentino Perdomo, Defendants.**

**No. 04–23184 CIV.**

United States District Court, S.D. Florida.

Jan. 13, 2006.

Maureen Genevieve Pearcy, Ronald Lee Kammer, Colleen A. Hoey, Hinshaw & Culbertson, Miami, FL, for Plaintiff.

Alvaro Luis Mejer, Armstrong & Mejer, Coral Gables, FL, Jose Manuel Francisco, Steven Randy Simon, Miami, FL, for Defendants.

*OMNIBUS ORDER (1) DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; (2) GRANTING PLAINTIFF'S MOTIONS FOR FINAL SUMMARY JUDGMENT; AND (3) DENYING AS MOOT MOTION TO STRIKE DEFENDANTS' UNTIMELY WITNESS LISTS*

SEITZ, District Judge.

THIS MATTER is before the Court based on several motions. The first two are related: (1) Defendant Jose Perdomo's [1] Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE–85] and (2) Defendants Miami River Club, Inc. d/b/a Centro Espanol. Valencia Nightclub, Inc., Abdon Grau,[2] and Maria Dolores Besancon's [3] Motion to Dismiss for Lack of Jurisdiction [DE–88], which adopts the arguments set forth in Perdomo's Motion to Dismiss. The third is Plaintiff Clarendon America Insurance Company's ("Clarendon's") Motion for Final Summary Judgment [DE–27]. The fourth is Clarendon's Second Motion for Final Summary Judgment [4] [DE–83]. The fifth is Clarendon's Motion to Strike Defendants' Untimely Witness Lists [DE–76].

Clarendon seeks a declaratory judgment by this Court that it has no obligation to insure and provide a defense to its insured—the Miami River Club d/b/a Centro Espanol, which may now be called Valencia Nightclub, Inc. (the "Club")—in a state

---

1. Jose Perdomo is the personal representative of the estate of Florentino Perdomo, the deceased in the underlying state court action described more fully below.

2. According to the Amended Complaint, Defendant Grau is "the sole officer and director of the Miami River Club." (Am. Compl. ¶ 8.)

3. According to the Amended Complaint, Defendant Besancon is "an officer and director of Valencia Nightclub." *Id.* at ¶ 10.

4. The Court notes that Clarendon filed a Second Motion for Final Summary Judgment, based on its insured's admissions in discovery responses obtained after the filing of the initial Motion for Final Summary Judgment. Defendant Jose Perdomo was the only Defendant to file a response thereto. Defendant Perdomo did not object to the filing of the motion itself; he only opposed the motion on its merits.

court action involving the shooting death of Florentino Perdomo in the Club's parking lot. Clarendon alleges in its initial Motion for Final Summary Judgment [DE–27] that an assault and battery exclusion in the Commercial General Liability Policy issued to the Club (1) precludes coverage for its insureds; and (2) relieves Clarendon of any duty to indemnify or defend its insureds for any claims brought against them by the Estate of Florentino Perdomo. Clarendon alleges in its Second Motion for Final Summary Judgment that, because Grau admitted to violations of the representations and warranties endorsement of the policy, it has no duty to defend or indemnify its insureds for any claims brought against them by the Estate of Florentino Perdomo.

The Court has reviewed the parties' papers, the case law, and the relevant portions of the record. Accordingly, the Court finds that it has subject matter jurisdiction over this action and denies Defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction. Further, the Court grants Clarendon's two Motions for Final Summary Judgment. The Court denies as moot Clarendon's Motion to Strike Witness List.

## I. FACTUAL BACKGROUND

### A. The Perdomo Estate's Underlying Complaint

On the night of September 12, 2004, Florentino Perdomo was shot and killed in the parking lot of the Club. Am. Compl. ¶ 14. On February 2, 2005, the Perdomo Estate filed a complaint in the Circuit Court of the 11th Judicial Circuit, in and for Miami–Dade County, Florida, Case No. 05–20402 CA 20 ("Estate's Compl."), seeking damages against the Club and the alleged property owners of the club for their negligence which caused Perdomo's death. (Exh. B to Mot. for Final. Summ. J.) The Perdomo Estate alleges that a criminal assailant shot Florentino Perdomo. (Estate's Compl. ¶¶ 6, 7, 13, 21.) The Estate's Complaint alleges that the named Defendants knew, or had reason to know, of the likelihood of third-party criminal assaults on or near the Club's premises. (Id. ¶¶ 14, 22, 30, 38.)

### B. The Clarendon Insurance Policy

At the time of Florentino Perdomo's death, the Club was the named insured[5] under Commercial General Liability Policy No. APX–GL–00037092 (the "Clarendon Policy"), issued by Clarendon for the November 28, 2003 to November 28, 2004 policy period. (Exh. 1 to Exh. C to Mot. for Final Summ. J.) The Clarendon Policy provides for a personal injury and advertising injury limit of $1,000,000. (Id. § 4(C).) The Clarendon Policy states in pertinent part:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> SECTION I COVERAGES
>
> COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. **Insuring Agreement**

5. In addition to the Club itself, the insurance policy provides that, for "[a]n organization other than a partnership or joint venture," its **"executive officers"** [as defined in the policy] and directors are insureds, but only with respect to their duties as … officers and directors …." (See Exh. 1 to Exh. C to Mot. for Final Summ. J.) Accordingly, based on the allegations in the Amended Complaint that Defendant Grau is "the sole officer and director of the Miami River Club," and Defendant Besancon is "an officer and director of Valencia Nightclub," both individuals are insureds under the policy. None of the Defendants has claimed that these individuals hold other titles or are not insureds under the policy. Further, as mentioned previously, Valencia Nightclub could also be an insured, since that may be the new name of the Miami River Club.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage," caused by an "occurrence," to which this insurance applies. We will pay those sums or perform those acts or services as are indicated under CLAIM EXPENSES—COVERAGES A AND B.... The "bodily injury" or "property damage" must be caused by an "occurrence." ... We will have the right and duty to defend any "suit" seeking those damages. But:

. . .

(4) We have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damages" to which this insurance does not apply:

. . .

**2. Exclusions.**

This insurance does not apply to:

. . . [see Assault & Battery Exclusion Form]

The following exclusion is added to SECTION I—COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Paragraph 2. Exclusions:

1. **"Claims"** or **"suits"** to recover damages for **"bodily injury"** or **"property damage"** arising out of, resulting from or in any way connected with actual or alleged **"assault"** and/or **"battery."** Pursuant to this exclusion, the Company is under no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to:

a. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near premises owned by the insured; or by any other person;

b. The alleged failure or fault of the insured, or his officers, employees, agents, or servants, in the hiring supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured;

c. The alleged failure or fault of the insured, or his officers, employees, agents or servants, to attempt to prevent, bar or halt any such conduct.

2. Additionally, this exclusion applies to any **"claim"** or **"suit"** by any other person, firm, or organization, asserting rights derived from, or contingent upon, any person having or asserting a "claim" or "suit" which is excluded under paragraphs 1.a. through 1.c. above. In addition this exclusion specifically excludes from coverage "claims" or **"suits"** for:

a. Emotional distress, or for loss of society, services, consortium and/or income;

b. Reimbursement for expenses (including but not limited to medical expenses, hospital expenses and wages) paid or incurred by such other person, firm, or organization;

c. Any obligation to share damages with or repay someone who must pay damages because of **"bodily injury"** or **"property damage"**; all arising from actual or alleged **"assault"** and/or **"battery."**

The following definitions are added to SECTION V—DEFINITIONS:

**"Assault"** means the apprehension of harmful or offensive contact between or among two or more persons by threats through words or deeds.

**"Battery"** means the harmful or offensive contact between or among two or more persons.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

. . .

**This endorsement is effective:** 11/28/03

### SECTION IV—CONDITIONS

16. **Choice of Law.**

The policy, and all disputes relating to the parties' obligations under this policy, shall be interpreted, construed, governed by and enforced in accordance with the laws of the State of Illinois.

. . .

### SECTION V—DEFINITIONS

. . .

9. **"Claim"** means each separate and distinct **"bodily injury"** . . . sustained by a third party for which . . . **"suit"** is filed.

. . .

43. **"Suit"** means a civil proceeding in which legal damages because of **"bodily injury"** . . . to which this insurance applies are alleged.

. . .

### BREACH OF REPRESENTATIONS AND WARRANTIES ENDORSEMENT

This endorsement modifies insurance provided under the following:

The Named Insured understands and agrees that the following representations and warranties are material and that the Company is relying on the truthfulness of these representations and warranties, which are made the basis of and a condition for the Company's acceptance of the risks covered by this insurance. The Named Insured further understands and agrees that if any of the following material representations and warranties are false, or if the Named Insured fails to comply with any

of the following representations and warranties at any time during the **"policy period,"** the Named Insured shall be deemed to have breached this insurance policy. A breach of any of the following representations and warranties will result in this policy not applying to any **"claim"** or **"suit"** brought hereinunder.

. . .

B. The Named Insured further represents and warrants that the following are true and correct as of the inception date of the policy and will remain so at all times during the **"policy period"**:

. . .

2. There are no firearms on any insured's premises or on any parking facility used in connection with such premises.

3. There are no armed security persons or armed guards on any insured's premises or on any parking facility used in connection with such premises.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Defendant Grau made the following admissions in response to Clarendon's First Request for Admissions:[6]

Request 7: Admit that your name is signed in your handwriting on page 2 of the warranty application attached as "Exhibit B."

Response:[7] This defendant admits request number 7. (Next to this signature, title listed is "Pres.").

Request 9: Admit that, on the attached "Exhibit B" in response to question number 20, you answered there are no guns permitted or kept on the premises.

---

6. Clarendon's First Request for Admission is attached to the Second Motion for Final Summary Judgment as Exhibit 2.

7. Defendant Grau's Amended Response to Clarendon's First Request for Admission is attached to Clarendon's Second Motion for Final Summary Judgment as Exhibit 3.

Response: This defendant admits that he marked the box "no" to the question of "are guns permitted or kept on the premises." However, this defendant understood this question to apply to non-security personnel of Miami River Club, Inc. such as its patrons.

Request 26: Admit that Miami River Club, Inc. d/b/a Centro Espanol, employs a security guard named Jesus R. Gomez.

Response: This defendant admits Miami River Club, Inc. employed Jesus Gomez who provides security.

Request 27: Admit that Jesus Gomez provides security service for Miami River Club, Inc. d/b/a Centro Espanol.

Response: This defendant admits request number 27.

Request 28: Admit that Jesus Gomez is armed with a weapon while on duty at Miami River Club, Inc. d/b/a Centro Espanol.

Response: This defendant admits request number 28.

## II. DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The Amended Complaint alleges that this Court has jurisdiction pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute. (Am. Compl. ¶ 2.) Defendants contend that this Court lacks subject matter jurisdiction over the instant declaratory judgment action, because the amount in controversy does not exceed $75,000. Defendants argue that (1) Clarendon and the agent who issued the insurance policy to them failed properly to advise the Miami River Club that the assault and battery coverage in prior policies had been removed from the current policy; and (2) the prior insurance policies included assault and battery coverage with a maximum lia-

bility limit of $50,000. (Perdomo's Mot. to Dismiss ¶¶ 4, 5.) Accordingly, because Clarendon's maximum exposure would be $50,000 for the at-issue incident, this Court lacks subject matter jurisdiction. The Court disagrees.

### A. Legal Standard

■ "The operation of the Declaratory Judgment Act is procedural only." *Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir.2003) (citations omitted). The party seeking relief under the Declaratory Judgment Act must allege facts establishing an independent basis for a district court's exercise of federal jurisdiction. *Id.*

■ Title 28, section 1332 of the United States Code provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [c]itizens of different States ...." [8] 28 U.S.C. § 1332(a)(1). Generally, a court will not dismiss a case for lack of subject matter jurisdiction, "unless it appears to a 'legal certainty' that [a] plaintiff's claim is actually for less than the jurisdictional amount." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1094 (11th Cir.1994) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). However, where a plaintiff's claim is for an indeterminate amount of damages, "the *Red Cab Co.* 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F.3d 805, 807 (11th Cir.2003) (citations omitted).

---

**8.** Plaintiff has asserted diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendant does not dispute diversity of citizenship; it only challenges the amount in controversy.

## B. The Amount in Controversy Requirement is Satisfied.

■■ "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Id.* In an action by an insurance company seeking a court's declaration that it has no duty to defend or indemnify its insured in an underlying lawsuit, a court examines the following factors to determine the amount in controversy: [9] (1) the coverage limits under the insurance policy; (2) the amount of damages sought in the underlying lawsuit; and (3) the pecuniary value of the obligation to defend the underlying lawsuit. *Owners Ins. Co. v. James*, 295 F.Supp.2d 1354, 1359 (N.D.Ga. 2003) (citing, for the third factor, *Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir.1976)).[10]

■ Here, the Clarendon Policy attached to the Amended Complaint expressly shows that its personal injury coverage limit is $1,000,000. (Exh. A to Am. Compl.) This means that Clarendon could potentially face liability in excess of $75,000. Moreover, the Perdomo Estate has estimated that its damages in the underlying lawsuit will exceed $5,000,000. (Report of Parties' Planning Meeting ¶ 14 [DE–11].) Clarendon has satisfied the amount in controversy requirement.[11]

## III. CLARENDON'S MOTIONS FOR FINAL SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is appropriate when "the pleadings ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). Accepting this evidence as truthful, the Court must view the record and all factual

---

**9.** This is not necessarily an exhaustive list of factors.

**10.** In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit prior to October 1, 1981.

**11.** The Club's contention that its insurance broker failed to advise it that the 2003–2004 Clarendon Policy did not include assault and battery coverage would be relevant to any claim the Club might pursue against that broker; however, it does not bear on whether or not Clarendon has met the amount in controversy requirement for diversity jurisdiction here. The fact remains that the Clarendon Policy—not policies during prior coverage periods—was in effect at the time of Florentino Perdomo's shooting death. The Club had a duty to learn and know the terms of its policy before signing it; courts assume that the terms of an insurance policy are well-known to an insured. *Florsheim v. Travelers Indemnity Co.*, 75 Ill.App.3d 298, 30 Ill.Dec. 876, 393 N.E.2d 1223, 1231 (1979); *Foster v. Crum and Forster Ins. Co.*, 36 Ill.App.3d 595, 345 N.E.2d 49, 51 (1976) ("Although we recognize ... that laymen may not, as a common practice, read insurance policies, we cannot excuse plaintiffs from their burden of knowing the contents of insurance policies and bringing alleged discrepancies to the attention of the company"). The policy issued approximately ten (10) months prior to Florentino Perdomo's death, giving the Club ample time to understand the limits of its coverage and to seek to change the coverage if it so desired. Moreover, nothing on the face of the policy shows that the Clarendon Policy was meant to be a renewal policy (for instance, page 1 of the Clarendon Policy does not show "renewal" marked), and the Club has not provided any evidence in support of this theory.

inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (internal quotations omitted); *see also Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505 ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment: the requirement is that there be no *genuine* issue of material fact") (emphasis in original).

■ In a declaratory judgment action, "if the allegations in the complaint alleging a claim against the insured either are acts not covered by the policy or are excluded from the policy's coverage, the insurer is not obligated to defend or indemnify the insured." *IDC Constr., LLC v. Admiral Ins. Co.,* 339 F.Supp.2d 1342, 1347 (S.D.Fla.2004) (citations omitted). A court should grant summary judgment "in a declaratory judgment action seeking a declaration of coverage, when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Id.* (citations omitted). With these principles in mind, the Court now turns to Clarendon's Motions for Final Summary Judgment.

## B. DISCUSSION

### 1. *Choice of Law*

■ The Clarendon Policy provides that Illinois law governs its interpretation. (Exh. 1 to Exh. C to Mot. for Final Summ.

J.) Florida respects choice-of-law provisions in contracts. *See Shaps v. Provident Life & Accident Ins. Co.,* 826 So.2d 250, 254 n. 3 (Fla.2002) (citing *Fioretti v. Mass. Gen. Life Ins. Co.,* 53 F.3d 1228, 1235 (11th Cir.1995)). Defendants argue that this Court should follow the doctrine of *lex loci contractus* and apply Florida law, because the parties entered into the insurance contract in Florida. Defendants are incorrect. "The doctrine of *lex loci contractus* directs that, *in the absence of a contractual provision specifying the governing law,* a contract (other than one for the performance of services) is governed by the law of the state in which the contract is made." *Fioretti,* 53 F.3d at 1236 (emphasis added). Here, because the Clarendon Policy unambiguously states that Illinois law governs "[t]his policy, and all disputes relating to the parties' obligations under this policy," the doctrine of *lex loci contractus* does not control. The Court shall apply Illinois law.

### 2. *Standard Regarding Insurance Contract Interpretation*

■ "An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Ins. Co.,* 214 Ill.2d 11, 291 Ill.Dec. 269, 823 N.E.2d 561, 564 (2005) (citations omitted). If the insurance policy language is unambiguous, courts will apply the policy as written, unless the language contravenes public policy. *Hobbs,* 291 Ill.Dec. 269, 823 N.E.2d at 564. Courts must not rewrite a contract to add meaning not originally present. *Oak Park Trust & Sav. Bank v. Intercounty Title Co.,* 287 Ill.App.3d 647, 222 Ill.Dec. 851, 853, 678 N.E.2d 723, 725 (1997) ("courts are not to distort the language of the title policy to create ambiguities in order to rewrite the policy"). Where no possibility of coverage exists

under an insurance policy, the insurer has no duty to defend and indemnify its insured. *State Farm Fire & Cas. Co. v. Hatherley,* 250 Ill.App.3d 333, 190 Ill.Dec. 170, 173, 621 N.E.2d 39, 42 (1993).

3. *The Assault and Battery Exclusion in the Clarendon Policy Precludes Coverage for the Incident at Issue; Clarendon Has No Duty to Defend or Indemnify its Insureds.*[12]

The language of the assault and battery exclusion endorsement in the Clarendon Policy is clear: "This insurance does not apply to ... "[c]laims" or "suits" to recover damages for **"bodily injury"** or **"property damage"** arising out of, resulting from or in any way connected with actual or alleged **"assault"** and/or **"battery"**." (Exh. 1 to Exh. C to Mot. for Final Summ. J.) The Perdomo Estate alleges that a criminal assailant shot and killed Florentino Perdomo on the Club's premises. (Estate's Compl. ¶ 3.) Accordingly, this incident falls within the assault and battery exclusion of the policy.

Only Defendant Perdomo filed a response regarding the assault and battery exclusion's application. The other Defendants joined Defendant Perdomo's response. [See DE–77]. Defendants do not contend that the assault and battery exclusion precludes both the duty to defend and indemnify the insureds in the underlying lawsuit. Rather, they argue that the *existence* of the assault and battery exclusion is a disputed issue of fact, because (1) a certain endorsement—the "application incorporation endorsement"—deleted the assault and battery exclusion endorsement from the Clarendon Policy: and (2) the Club's insurance broker acted negligently by failing to inform the Club that the Clarendon Policy did not contain coverage

for injuries sustained from actual or alleged assault and/or battery. (Perdomo's Opp'n to Mot. for Final Summ. J. 8: "Whether the policy did in fact contain an assault and battery exclusion, is a disputed issue of fact based on this endorsement and the affidavit of Abdon Grau that he was not aware that this policy contained an assault and battery exclusion.")

■ Defendants' first argument regarding the application incorporation endorsement wholly misstates the plain language of that endorsement. The application incorporation endorsement states:

**APPLICATION INCORPORATION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**SPECIAL COVERAGE PART**

**NAMED PERILS COVERAGE PART**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED POLICY**

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART CLAIMS MADE AND REPORTED POLICY**

**LIQUOR LIABILITY COVERAGE PART**

**LIQUOR LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED POLICY**

**EXCESS LIABILITY POLICY**

By this endorsement, the attached Application(s) is/are hereby made a part of and is/are incorporated into the policy referenced herein, including all state-

---

**12.** Clarendon addressed this issue in its initial Motion for Final Summary Judgment [DE– 27].

ments, warranties and representations contained therein.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

**Company:** Clarendon America Insurance Company

**Named Insured:** Miami River Club DBA Centro Espanol

**This endorsement is effective:** 11/28/2003

**Policy Number:** APX–GL–00037092

**Endorsement Number:** 1

**Date Issued:** 1/29/2004

By its plain language, this endorsement incorporates the insurance application, including any and all statements, representations and warranties, into the Clarendon Policy. It does not list every endorsement previously made part of the policy, nor does it delete any other sections or endorsements of the policy. Defendants argue that, because the assault and battery exclusion endorsement does not appear in the list of coverage parts being modified, it was deleted from the policy. This makes no sense. The endorsement expressly states which coverage parts it has modified, and further states that *"all other terms and conditions of this policy remain unchanged."* (emphasis added). Nothing in this endorsement conflicts with or deletes the assault and battery exclusion.[13]

 Defendants' second argument is that the assault and battery exclusion does not exist, because the insurance agency—Elliott, McKiever & Stowe, Inc.—

failed to advise Defendant Grau that the Clarendon Policy did not contain assault and battery coverage. Defendant Grau states in his affidavit submitted in opposition to the initial Motion for Final Summary Judgment that "it was [his] understanding that Elliott McKiever & Stowe, Inc. Was [sic] the agent of Clarendon." (Grau Aff.[14] ¶ 11.) This does not defeat summary judgment. The assault and battery exclusion is plainly a part of the Clarendon Policy. As mentioned previously, Defendant Grau, as the Club's official, had a duty to learn and know the terms of the Clarendon Policy before signing it. *See Florsheim v. Travelers Indemnity Co.,* 75 Ill.App.3d 298, 30 Ill.Dec. 876, 393 N.E.2d 1223, 1231 (1979); *Foster v. Crum and Forster Ins. Co.,* 36 Ill.App.3d 595, 345 N.E.2d 49, 51 (1976). The Club had approximately ten (10) months before Florentino Perdomo's death to understand the limits of its coverage and raise any discrepancies with Clarendon. Neither Defendant Grau nor the Club has asserted as an affirmative defense (or as a counterclaim against Clarendon) Clarendon's potential liability under an agency theory for Elliott, McKiever & Stowe's alleged negligence. Although it is true that, pursuant to Illinois law, "an insured's failure to read his own policy is not an absolute bar to the insured's right to recover *against his broker* for breach of the *broker's* fiduciary duty," the Club's potential claim against Elliott, McKiever & Stowe is not before this Court. *Black v. Ill. Fair Plan Ass'n,* 87 Ill.App.3d 1106, 42 Ill.Dec. 934, 409 N.E.2d 549, 553 (1980).

---

**13.** Defendants do not dispute that Exhibit 1 to Exhibit C to Clarendon's initial Motion for Final Summary Judgment is a true and correct copy of the Clarendon Policy. Notably, page 2 of the Clarendon Policy—the Schedule of Forms—lists the endorsements to the policy, including the assault and battery exclusion endorsement. The Schedule of Forms does not list the application incorporation endorse-

ment, because it issued on January 29, 2004, *after* the Clarendon Policy issued. However, the application incorporation endorsement's effective date is the same as that of the Clarendon Policy—November 28, 2003.

**14.** "Grau Aff." refers to the Affidavit of Abdon Grau, submitted in opposition to Clarendon's initial Motion for Final Summary Judgment.

Even if this Court could address the issue of Clarendon's liability for its alleged agent's negligence, Defendants have offered no evidence of agency, other than Defendant Grau's assertion in his affidavit that it was his "understanding that Elliott McKiever & Stowe, Inc. Was [sic] the agent of Clarendon." Further, Defendants' reliance on Florida Statute section 626.342 and *Almerico v. R.L.I. Ins. Co.*, 716 So.2d 774 (Fla.1998), for the proposition that Clarendon is liable for Elliott McKiever & Stowe's alleged negligence, is misplaced. *Almerico* predicates liability on insurance companies "who cloak unaffiliated insurance agents with sufficient indicia of agency to induce a reasonable person to conclude that there is an actual agency relationship." *Id.* at 783 (citing as an indicia of agency the provision of company materials, such as a company insurance application, to independent brokers). Here, the insurance application attached to the Clarendon Policy does not contain Clarendon's name. (See Exh. 1 to Exh. C. of Mot. for Final Summ. J.) The application Grau completed appears to be a standard application, that is not company-specific. Summary judgment in Clarendon's favor is appropriate.

4. *Clarendon Has No Duty to Defend or Indemnify its Insureds, Because Defendant Grau's Admissions that the Club Kept Firearms and Armed Security Guards on Its Premises Reveal That the Club Breached the Representations and Warranties Contained in the Clarendon Policy.*[15]

■ As previously discussed, courts construe insurance contracts in accordance with their plain language. *Hobbs*, 291 Ill. Dec. 269, 823 N.E.2d at 564. The Claren-

don Policy contains the following provision:[16]

**BREACH OF REPRESENTATIONS AND WARRANTIES ENDORSEMENT**

This endorsement modifies insurance provided under the following:

The Named Insured understands and agrees that the following representations and warranties are material and that the Company is relying on the truthfulness of these representations and warranties, which are made the basis of and a condition for the Company's acceptance of the risks covered by this insurance. The Named Insured further understands and agrees that if any of the following material representations and warranties are false, or if the Named Insured fails to comply with any of the following representations and warranties at any time during the **"policy period,"** the Named Insured shall be deemed to have breached this insurance policy. A breach of any of the following representations and warranties will result in this policy not applying to any **"claim"** or **"suit"** brought hereinunder.

. . .

B. The Named Insured further represents and warrants that the following are true and correct as of the inception date of the policy and will remain so at all times during the **"policy period"**:

. . .

2. There are no firearms on any insured's premises or on any parking facility used in connection with such premises.

3. There are no armed security persons or armed guards on any insured's premises or on any parking facility used in connection with such premises.

---

15. Clarendon addressed this issue in its Second Motion for Final Summary Judgment [DE–83].

16. This condition appears in an endorsement to the Clarendon Policy, which was made a part of the Policy.

Defendant Grau, the Club's President, has admitted the following: (1) the Club employed Jesus Gomez as a security guard on its premises; (2) Jesus Gomez is armed with a weapon while on duty at the Club: and (3) guns are maintained on the premises.[17] (Exhs. 2 and 3 to Second Mot. for Final Summ. J.) Grau's admissions show that the Club breached the above-referenced, material representations and warranties, upon which Clarendon relied in issuing the insurance policy. Accordingly, Clarendon is under no duty to defend or indemnify its insureds for claims regarding Florentino Perdomo's shooting death.

The Court finds support for this determination in the decisions of Illinois courts, which have upheld similar provisions in insurance contracts. *Wabash Props. Inc. v. Transport Indemnity Co.*, No. 84–C–7641, 1985 WL 2452, at * 1, *4 (N.D.Ill. Aug.21, 1985) (enforcing endorsement requiring insured to maintain an automatic sprinkler system or face denial of coverage; no causal connection between breach of condition and loss required); *Mack v. Liverpool & London Globe Ins. Co.*, 329 Ill. 158, 160 N.E. 222, 225 (1928) ("[P]rovisions in an insurance contract which prohibit an increase of the risk or hazard and which avoid the policy upon their violation are valid and enforceable.... If the parties enter into such a contract it is binding upon them."). Defendant Perdomo attempts to avoid this result by making two separate arguments. Defendant Perdomo first argues that section 154 of the Illinois Compiled Statutes prevents summary judgment in Clarendon's favor because: (1) "Clarendon ... has not provided any evidence to show that the alleged misrepresentation or false warranty was made

with actual intent to deceive or that it materially effects [*sic*] either the acceptance of the risk or the hazard assumed by the company"; and (2) because Clarendon had provided coverage to the Club for three years, "Clarendon has no right to rescind the policy because it has been in effect for more than one (1) year and more than one (1) policy term," pursuant to the Illinois statute. (Perdomo's Opp'n to Clarendon's Second Mot. for Final Summ. J. 7–8.) Defendant Perdomo's second argument is that this Court should rely on the case of *American States Ins. Co. v. Byerly Aviation, Inc.*, 456 F.Supp. 967 (S.D.Ill. 1978), which requires a causal connection between the breach of the representation or warranty and the incident for which coverage is sought, in order for an insurance company to deny coverage on this basis. As explained below, Defendant Perdomo is mistaken on both accounts.

Section 154 of the Illinois Statutes provides:

Misrepresentations and false warranties. No misrepresentation or false warranty made by the insured or in his behalf *in the negotiation for a policy of insurance*, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. With respect to a policy of insurance as defined in subsection (a), (b), or (c) of

---

**17.** Grau stated that he had initially answered "no" to the question of whether or not guns were kept on the Club's premises, because he had "understood this question to apply to non-security personnel of Miami River Club, Inc. such as its patrons." (Exh. 3 to Second Mot. for Final Summ. J.)

Section 143.13 [215 ILCS 5/143.13], except life, accident and health, fidelity and surety, and ocean marine policies, a policy or policy renewal shall not be rescinded after the policy has been in effect for one year or one policy term, whichever is less. This Section shall not apply to policies of marine or transportation insurance.

215 Ill. Comp. Stat. 5/154 (2005) (emphasis added). "[T]he application of this section is limited as therein expressed, namely, in the 'negotiation for a policy.'" *Gov't Employees Ins. Co. v. Dennis,* 65 Ill.App.2d 365, 212 N.E.2d 759, 761 (1965). Notably, none of the alleged misrepresentations appeared in the application for the Clarendon Policy; rather they appeared clearly in the text of the policy as part of the breach of representations and warranties endorsement. (*See* Exh. 1 to Exh. C to Mot. for Final Summ. J.) However, notwithstanding this, the endorsement specifically acknowledges that "the following representations and warranties *are material* and that *the Company is relying on the truthfulness of these representations and warranties, which are made the basis of and a condition for the Company's acceptance of the risks covered by this insurance.*" (*Id.*) (emphasis added). This satisfies the requirements of the statute's second sentence, above. Further, the statute's third sentence only applies to the types of policies described in section 143.13(a), (b), and (c)—automobile, fire and other personal lines insurance "issued to a natural person for personal or family protection"—not commercial general liability policies. *See* 215 Ill. Comp. Stat. 5/143.13 (2005). Moreover, Defendants have offered no evidence

that Clarendon rescinded the policy. Accordingly, this Illinois statute does not bar summary judgment in Clarendon's favor.

The Court also rejects Defendants' argument that *Byerly* precludes summary judgment in Clarendon's favor. Although the *Byerly Aviation* court held that, under the circumstances present in that case, a causal connection between the excluded circumstances and the cause of the loss must exist to invoke the exclusion, this Court has not located one Illinois decision that has cited *Byerly* with approval. Further, the Illinois Supreme Court in *Mack,* discussed previously, enforced an exclusion which had no relation to the at-issue loss, and that decision has not been overturned. *Mack,* 160 N.E. at 225; *see also Harris Trust & Sav. Bank v. Ill. Fair Plan Ass'n,* 68 Ill.App.3d 934, 25 Ill.Dec. 70, 386 N.E.2d 341, 343 (1979) (citing *Mack* with approval). This Court must follow the law as stated by Illinois' highest court.

## IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that:

(1) Defendant Perdomo's Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE–85] is DENIED;

(2) Defendants Miami River Club. Inc. d/b/a Centro Espanol, Valencia Nightclub, Inc., Abdon Grau,[18] and Maria Dolores Besancon's Motion to Dismiss for Lack of Jurisdiction [DE–88] is DENIED;

(3) Plaintiff Clarendon America Insurance Company's Motion for Final Summary Judgment [DE–27] is GRANTED. Clarendon has no obligation to defend or indemnify its insureds[19] for any claims

---

**18.** According to the Amended Complaint, Defendant Grau is "the sole officer and director of the Miami River Club." (Am. Compl. ¶ 8.)

**19.** The Court refers to the "insured" because the Miami River Club may have been under a different name, Valencia Nightclub, during

the relevant policy period, and Clarendon is seeking summary judgment as to any potential insured.

brought against them for the shooting death of Florentino Perdomo;

(4) Clarendon's Second Motion for Final Summary Judgment [DE–83] is GRANTED. Clarendon has no obligation to defend or indemnify its insureds for any claims brought against them for the shooting death of Florentino Perdomo;

(5) Clarendon's Motion to Strike Defendants' Untimely Witness Lists [DE–76] is DENIED AS MOOT;

(6) Any pending motions not discussed in the Order are DENIED AS MOOT; and

(7) This case is CLOSED.